FRENZ v. HUME et al.

(District Court, N. D. California. October 24, 1905.)

No. 13,401.

1. SHIPPING—MASTER—WAGES—ATTEMPTED ABANDONMENT OF VESSELS TO INSURERS.

The attempted abandonment of a vessel to the insurers after her stranding, which they refused to accept, whether sufficient in law to vest the ownership in them or not, could not operate to render them liable for the subsequent wages of the master, whom they did not employ.

SAME.

Libelant was employed by the owners of a schooner, which was afterward stranded. The insurers undertook the salving of the vessel, and the owners wrote libelant to co-operate with them in the work. They subsequently gave notice to the insurers of the abandonment of the vessel, which the insurers refused to accept. After she was salved and temporarily repaired libelant loaded a cargo and proceeded on the voyage, not having any notice of the attempted abandonment until he reached his port of destination. *Held*, that the former owners, by whom he was employed, were liable to libelant for his wages up to that time.

In Admiralty. Suit in personam by master to recover wages.

H. W. Hutton, for libelant.
Nathan H. Frank, for defendant R. D. Hume.
L. T. Hengstler and Charles W. Slack, for insurance companies.

DE HAVEN, District Judge. This is a libel in personam. The libel alleges that between June 18, 1904, and January 16, 1905, the libelant rendered to the defendants, at their request, 5 months and 27 days service as master of the schooner Del Norte, at the agreed rate of compensation of $100 per month, and during that time also expended for and on account of the vessel the sum of $85.22, leaving a balance due to the libelant of the sum of $671.91. The defendants filed separate answers, each denying the allegations of the libel. It appears from the evidence that the defendant Hume was on April 14, 1904, a member of the firm of R. D. Hume & Co. This firm was at that time the owner of the schooner Del Norte, and then employed libelant as her master, agreeing to pay him $100 per month for his services. On the 11th of June following the Del Norte went ashore at the mouth of the Siuslaw river, on the coast of Oregon. The other defendants, insurance companies, were insurers of the vessel, and with the consent of the firm of R. D. Hume & Co. immediately undertook the work of salving her, and repairing the injuries which she had sustained as the result of her stranding. Shortly after the work of salving and repairing had commenced, the defendant Hume notified his codefendants, the insurance companies,

141 F.—31

that they could take the vessel and do what they pleased with her, and that she was abandoned to them. The insurance companies refused to accept the abandonment. The Del Norte was rescued from her perilous situation on the Siuslaw bar, underwent temporary repairs, and then the libelant, still retaining his position as her master, took on board a cargo of lumber for San Francisco, and arrived in that port October 15, 1904. Neither of the defendants would accept the freight earned on this trip; all of them disclaiming ownership of the vessel, and the defendant Hume asserting that she had been abandoned to the defendant insurance companies, and the insurance companies insisting upon their refusal to accept such abandonment. There was also evidence tending to show that after her arrival in San Francisco the vessel was sold to satisfy liens for permanent repairs made necessary by her stranding, and which defendant Hume claims should have been discharged by the other defendants. The libelant was not informed by Hume until October 15, 1904, that the firm of R. D. Hume & Co. had abandoned the Del Norte to the insurance companies.

1. The defendant Hume contends that he is not liable for the wages of libelant after the defendant insurance companies took possession of the Del Norte, for the purpose of salving her, that she was then abandoned to the insurance companies, and that they are responsible for the wages subsequently earned by the libelant as her master. In the view I take of the case, it is unnecessary to determine whether the owners of the Del Norte had the right to abandon her to the insurance companies or not, or whether the notice of abandonment was under the circumstances sufficient to vest in those companies the ownership, and make them liable as insurers as for a total loss of the vessel. It is undisputed that the defendant insurance companies have at all times denied the right of the owners to make such abandonment, and have refused to accept or to have anything to do with the vessel or her earnings; and it is not shown that they ever employed the libelant as master. It is clear upon this state of facts the libelant has no cause of action against the insurance companies. It is a familiar principle of law that:

"Neither a liability ex contractu nor a liability quasi ex contractu can be imposed upon a person otherwise than by his act or consent. One man cannot force a benefit upon another without his knowledge or consent, and then compel him to pay for it." Clark on Contracts, p. 779.

The only exception to this rule is found in that class of cases "in which the law creates a duty to perform that for which it implies a promise to pay, notwithstanding the party owing the duty absolutely refuses to enter into an obligation to perform it. The law promises in his stead and his behalf." Earle v. Coburn, 130 Mass. 596. But the libelant's case as against the insurance companies is not covered by this exception, but falls within the general rule "that no one can be permitted to force himself upon another as his creditor." Even if it should be conceded that the notice of abandonment was, in view of the circumstances under which it was given, sufficient to vest in them the constructive ownership of the Del Norte, the law did not impose upon the defendant insurance companies any duty to employ her in any manner, and the services ren-

dered by the libelant as her master were as to them officious and against their consent, because they at all times disclaimed any ownership of the Del Norte, or right to employ her or receive her earnings.

2. The case as to defendant Hume is different. The libelant was originally employed by the firm of R. D. Hume & Co., of which the defendant Hume was a member, and after the stranding of the steamer Hume, on June 22, 1904, wrote him as follows:

"As a representative of the insurance companies is there and as you are the master of the vessel, you are agent for all concerned, so I depend on you to see that the operations are conducted with as much economy as is possible. At this distance, I am unable to judge of the conditions existing and must depend on your good judgment to bring back the vessel with as little expense incurred as is possible."

The libelant might well have understood from this letter that he was to continue as master of the Del Norte under his original employment, and he was not otherwise informed by the firm of R. D. Hume & Co. until October 15, 1904, when he was first notified by them of their present contention that the services rendered by him subsequent to the stranding of the vessel were in fact rendered to the insurance companies as her owners. Upon consideration of all of the evidence, my conclusion is that the libelant is entitled to recover from the defendant Hume for his services as master of the Del Norte from June 18, 1904, to October 15, 1904, at the rate of $100 per month.

Let a decree be entered dismissing the libel as to the defendant insurance companies, with costs, and in favor of the libelant against the defendant Hume, for the sum of $390, with interest thereon from October 15, 1904, and costs.